IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kari Davidson, | ) |
| | ) |
| Plaintiff, | ) Case No. 22-cv-6522 |
| | ) |
| v. | ) |
| | ) |
| Faria Education Group Limited, | ) |
| dba Faria Systems Inc., and | ) |
| dba ManageBac Inc., | ) |
| | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES the Plaintiff, Kari Davidson, (hereinafter referred to as "Plaintiff," "Kari," or "Davidson"), by her attorneys, and for her complaint against the Defendant, Faria Education Group Limited, dba Faria Systems Inc., and dba ManageBac Inc (hereinafter referred to "Defendant") states as follows:

## NATURE OF THE ACTION

1. This action is brought by Plaintiff Kari Davidson, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; The Equal Pay Act of 1963, 29 U.S.C. § 206; the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq; and The Illinois Equal Pay Act of 2003, 820 ILCS 112.

2. Plaintiff seeks relief for employment discrimination based on sex, as well as retaliation for complaining about sex discrimination.

3. While employed by Defendant, Plaintiff was subject to unlawful employment practices on the basis of her sex. Plaintiff was not given a commensurate title and was paid less than her male predecessor. Defendant took no action to remedy the sex discrimination. Instead, after

reporting sex discrimination, Plaintiff was subjected to retaliation, including Defendant denying her reasonable time off to care for her terminally ill mother and refusing to allow her to relocate to maintain her employment, among other things, and ultimately terminating her employment for a pretextual reason.

## PARTIES

4. Kari Davidson was employed by Defendant in Chicago, Illinois.

5. Davidson is a woman.

6. In her initial (June 23, 2017) offer letter, "Faria Systems Inc." was referenced as her employer. In that same letter, though, "Faria Education Group" was on the letterhead.

7. Faria Systems, Inc. is a Delaware corporation.

8. Faria Education Group, Ltd. is organized in Hong Kong.

9. In her August 1, 2019 offer letter, her employer was labeled "ManageBac Inc., a subsidiary of the Faria Education Group Limited."

10. ManageBac is the United States subsidiary of Faria Education Group, Ltd.

11. ManageBac is a Delaware corporation.

12. "Faria Systems Inc" is the employer that appears on her W-2 Wage and Tax Statements from 2017, 2018, 2019 and 2020. The company listed an address of 350 N. Orleans St., #9000n, Chicago, IL 60654.

## JURISDICTION AND VENUE

13. Subject matter jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 ("federal question").

14. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

15. Venue is proper in this District pursuant to 28 U.S.C. § 1291(b) because all the alleged unlawful employment practices giving rise to this Complaint occurred within this District.

## FACTS

16. On June 23, 2017, Kari was hired by Defendant as a Sales Associate.

17. In July 2019, Kari's job title was Sales Consultant II (after several promotions). At that time, she was working remotely for Defendant in Milwaukee, WI.

18. In the weeks leading up to August 1, 2019, Kari was offered a promotion to take over the position of her then-manager, Stephen Worden.

19. Mr. Worden's title at that time was "Sales Director."

20. Kari was promised Stephen's position if she moved to work in Defendant's Chicago office.

21. Kari moved from Milwaukee to Chicago to work in Defendant's Chicago office on August 3, 2019.

22. Mr. Worden was promoted and moved to Portland, Oregon.

23. Kari assumed his job responsibilities in Chicago.

24. Kari learned that she would be given the title of "Regional Sales Manager" and not "Sales Director."

25. Kari expressed concerns that she would be doing the same job as Stephen did, without the same title.

26. After her move to the Chicago Office, Kari was responsible for Mr. Worden's former duties, as well as the duties she performed prior to her move. No one ever took over her old duties, and she was required to perform her duties as well as Mr. Worden's former duties.

27. Despite the fact that she was performing her duties as well as Mr. Worden's "Sales Director" duties, Kari did not earn as much as Mr. Worden had earned when he was Sales Director.

28. Kari also was charged with managing OpenApply Sales and Support Team for the Americas, in addition to Mr. Worden's other duties.

29. Throughout her employment, Kari discharged all duties assigned to her competently and had an excellent reputation with regard to the high quality of her work.

30. Due to Kari's outstanding performance, on August 21, 2020, Kari received a performance review which was very positive.

31. During the meeting to discuss this review, Kari shared with her supervisor, Stephen Worden, that she believed she was overworked, underpaid and underemployed.

32. Plaintiff escalated her concerns to the Chief Operating Officer, Kevin Piersialla, on September 3 and September 8, 2020. During their meetings, Plaintiff told Piersialla that she was concerned that she was performing the same and even expanded duties that Mr. Worden previously performed, but she received a lesser title and lesser pay than he received when he occupied that role, and the role was smaller then. She explained that she did not think it was fair that she earned less than him.

33. Immediately after sharing her concerns with the Chief Operating Officer, Kari was accused of having "performance issues."

34. Around late-August 2020, Kari took an approved vacation to focus on her final exams for her master's program.

35. During her absence, no one covered her emails or work.

36. Kari's supervisor, Stephen Worden, took a leave of absence following the August 2020 performance meeting, during which *his* emails and work were covered by other staff including Piersialla. After returning from his leave of absence, Worden was provided additional assistance in

4

clearing his backlog. Even with the assistance of another staff member, Worden found the work overwhelming, and he was told to take time off and let others handle his email and work.

37. No such assistance was ever offered to Kari.

38. Kari was accused of sub-par performance due to the backlog of work caused by the lack of email and work coverage during her approved time off.

39. In late September 2020, Kari requested time off to assist her mother who had been re-diagnosed with cancer.

40. Kari was initially told this request was approved.

41. But while Kari was on leave, and without warning, she was informed that the previously-approved time off request was reversed, and she no longer had approved time off.

42. On October 23, 2020, Piersialla (with Alexa Floyd and Kathrine Giacchino) informed Kari that her position was being relocated to Portland, Oregon and that she was being terminated.

43. Kari expressly volunteered to relocate again to keep her job.

44. However, Defendant rejected her request to relocate.

45. Kari complained several times about the discriminatory treatment she received from Defendant because of her sex.

46. Plaintiff complained about unequal pay based on her sex.

47. Defendant ignored Kari's complaints and instead retaliated against her and continued to subject her to sex discrimination and lesser pay.

48. Defendant retaliated against Kari by refusing to allow her to relocate to keep her position.

49. Defendant's management directed, condoned, encouraged, and participated in the above-described unlawful conduct.

50. Defendant terminated Kari for a pretextual reason.

51. Kari was terminated because of her sex (the ultimate way of holding her to a different standard than men); and/or in retaliation for her complaining about sex discrimination.

## COUNT 1 – Sex Discrimination in Violation of Title VII

52. Plaintiff re-alleges and incorporates paragraphs 1 through 51 by reference as if re-pled herein in Count I.

53. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended makes it unlawful to discriminate against an individual with respect to her compensation, terms, conditions, or privileges of employment and/or to limit, segregate or classify employees in any way which would tend to deprive any employee of employment opportunities or otherwise adversely affect that employee because of her sex.

54. As detailed above, Plaintiff was discriminated against based on her sex.

55. The actions of Defendant, by and through the conduct of its agents, employees, supervisors, officers, and director (such persons collectively referred to as "agents" hereinafter) as described herein were based on Plaintiff's sex.

56. Plaintiff was meeting Defendant's legitimate employment expectations.

57. The "terms, conditions and privileges" of Plaintiff's employment were unreasonably and unjustifiably affected as a result of disparate treatment as compared to other male employees which was perpetuated and ratified by Defendant and its agents, all of which were in violation of Title VII, 42 U.S.C. 2000e(2)(a)(1).

58. As a direct and proximate result of the above-alleged willful and reckless acts of omissions of Defendant, Plaintiff suffered damages, including lost wages and benefits and emotional distress.

59. The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights, thus entitling Plaintiff to compensatory damages and punitive damages to punish Defendant for its actions and to deter it, and others from such actions in the future.

60. Plaintiff has exhausted all mandatory pre-complaint procedures required by law by filing timely administrative complaints with the U.S. Equal Employment Opportunity Commission ("EEOC"): on August 26, 2022, the EEOC issued its "Dismissal and Notice of Rights" dismissing the Plaintiff's charge of discrimination and directing the Plaintiff to file suit; and Plaintiff is filing this complaint within 90 days of her receipt of the EEOC Notice.

**WHEREFORE**, Plaintiff respectfully requests that the jury find in her favor, that this Court enter a judgment against Defendant, and that she be awarded:

   a. lost pay and benefits and all relief available under the law;
   b. Compensatory damages including for emotional distress;
   c. Punitive damages;
   d. Attorney's fees and costs; and
   e. Such other relief as this Court deems just and equitable.

### COUNT 2 – Sex Discrimination in Violation of the Illinois Human Rights Act

61. Plaintiff re-alleges and incorporates paragraphs 1 through 51 by reference as if re-pled herein.

62. Section 2-102(A) of the Human Rights Act ("IHRA") provides, in pertinent part:

7

> It is a civil rights violation . . . [f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, . . . discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination. 775 ILCS 5/2-102(A).

63. The IHRA further defines "unlawful discrimination" as "discrimination against a person because of his or her: . . . sex." 775 ILCS 5/1-103(Q).

64. IHRA makes it unlawful to discriminate against an individual with respect to her compensation, terms, conditions, or privileges of employment and/or to limit, segregate or classify employees in any way which would tend to deprive any employee of employment opportunities or otherwise adversely affect that employee because of her sex.

65. As detailed above, Plaintiff was discriminated against based on her sex.

66. The actions of Defendant, by and through the conduct of its agents, employees, supervisors, officers, and director (such persons collectively referred to as "agents" hereinafter) as described herein were based on Plaintiff's sex.

67. As a direct and proximate result of the above-alleged willful and reckless acts of omissions of Defendant, Plaintiff suffered damages, including lost wages and benefits and emotional distress.

68. The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights, thus entitling Plaintiff to compensatory damages and punitive damages to punish Defendant for its actions and to deter it, and others from such actions in the future.

69. Plaintiff has exhausted her administrative remedies under the Illinois Human Rights Act: the EEOC Charge mentioned above was cross-filed with the Illinois Department of Human

Rights; the IDHR issued its own right to sue letter on October 11, 2022; and Plaintiff is filing this complaint within 90 days of her receipt of the IDHR Notice.

**WHEREFORE**, Plaintiff respectfully requests that the jury find in her favor, that this Court enter a judgment against Defendant, and that she be awarded:

    a. lost pay and benefits and all relief available under the law;

    b. Compensatory damages including for emotional distress;

    c. Punitive damages;

    d. Attorney's fees and costs; and

    e. Such other relief as this Court deems just and equitable.

### COUNT 3 - Retaliation in Violation of Title VII

70. Plaintiff re-alleges and incorporates paragraphs 1 through 51 by reference as if re-pled herein.

71. Title VII prohibits retaliation for reporting sex discrimination.

72. Plaintiff reported sex discrimination.

73. After reporting sex discrimination, Plaintiff suffered adverse employment actions by Defendant when it refused her request for time off, fired her, and refused to allow her to relocate to keep her position.

74. The adverse actions taken by Defendant against Plaintiff were a direct result of and in response to the protected activity engaged in by Plaintiff, namely, her report of sex discrimination.

75. As a direct and proximate result of the above-alleged willful and reckless acts of omissions of Defendant, Plaintiff suffered damages, including lost wages and benefits and emotional distress.

**WHEREFORE**, Plaintiff respectfully requests that the jury find in her favor, that this Court enter a judgment against Defendant, and that she be awarded:

   a. lost pay and benefits and all relief available under the law;

   b. Compensatory damages including for emotional distress;

   c. Punitive damages;

   d. Attorney's fees and costs; and

   e. Such other relief as this Court deems just and equitable.

### COUNT 4: Retaliation in Violation of the IHRA

76. Plaintiff re-alleges and incorporates paragraphs 1 through 51 by reference as if re-pled herein.

77. The Illinois Human Rights Act prohibits retaliation for reporting sex discrimination.

78. Plaintiff reported sex discrimination.

79. After reporting sex discrimination, Plaintiff suffered adverse employment actions by Defendant when it refused her request for time off, fired her, and refused to allow her to relocate to keep her position.

80. The adverse actions taken by Defendant against Plaintiff were a direct result of and in response to the protected activity engaged in by Plaintiff, namely, her report of sex discrimination.

81. As a direct and proximate result of the above-alleged willful and reckless acts of omissions of Defendant, Plaintiff suffered damages, including lost wages and benefits and emotional distress.

**WHEREFORE**, Plaintiff respectfully requests that the jury find in her favor, that this Court enter a judgment against Defendant, and that she be awarded:

   a. lost pay and benefits and all relief available under the law;

    b.    Compensatory damages including for emotional distress;

    c.    Punitive damages;

    d.    Attorney's fees and costs; and

    e.    Such other relief as this Court deems just and equitable.

### COUNT 5—Violation of Equal Pay Act of 1963

82. Plaintiff re-alleges and incorporates paragraphs 1 through 51 by reference as if re-pled herein.

83. Under the Equal Pay Act, no employer shall discriminate between employees on the basis of sex by paying wages to a woman at a rate less than the rate at which he pays wages to a man for equal work on jobs the performance of which requires equal[1] skill, effort, and responsibility, and which are performed under similar working conditions.

84. Defendant paid Kari less than Stephen Worden for jobs that were equal[2] in skill, effort, and responsibility and had similar working conditions.

85. Kari was not paid less than Stephen Worden pursuant to a seniority system; a merit system; a system which measures earnings by quantity or quality of production; or any other differential based on any other factor other than her sex.

**WHEREFORE**, Plaintiff respectfully requests that the jury find in her favor, that this Court enter a judgment against Defendant, and that she be awarded:

    a.    The difference between her pay and Stephen Worden's;

    b.    an additional equal amount as liquidated damages;

---

[1] Which has been defined as "a significant portion of the two jobs is identical"

[2] Indeed, as detailed in the Facts section, Kari's job may have involved *more* skill, effort and responsibility and *more difficult* working conditions.

    c. Attorney's fees and costs; and

    d. Such other relief as this Court deems just and equitable.

## COUNT 6—Unlawful Retaliation in Violation of the Equal Pay Act

86. Plaintiff re-alleges and incorporates paragraphs 1 through 51 by reference as if re-pled herein.

87. The Equal Pay Act prohibits retaliation against an employee who makes a claim of unequal pay.

88. Plaintiff made a claim of unequal pay.

89. After making that claim, Plaintiff suffered adverse employment actions by Defendant when it refused her request for time off, fired her, and refused to allow her to relocate to keep her position.

90. The adverse actions taken by Defendant against Plaintiff were a direct result of and in response to the protected activity engaged in by Plaintiff, namely, her report of unequal pay.

91. As a direct and proximate result of the above-alleged willful and reckless acts of omissions of Defendant, Plaintiff suffered damages, including lost wages and benefits and emotional distress.

**WHEREFORE**, Plaintiff respectfully requests that the jury find in her favor, that this Court enter a judgment against Defendant, and that she be awarded such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3), including without limitation:

    a. the payment of wages lost;

    b. an additional equal amount as liquidated damages; and

    c. attorney's fees and costs.

## **COUNT 7—Violation of the Illinois Equal Pay Act**

92. Plaintiff re-alleges and incorporates paragraphs 1 through 51 by reference as if re-pled herein.

93. Under the Illinois Equal Pay Act, no employer may discriminate between employees on the basis of sex by paying wages to a female employee at a rate less than the rate at which the employer pays wages to a male employee for the same or substantially similar work on jobs the performance of which requires substantially similar skill, effort, and responsibility, and which are performed under similar working conditions.

94. Defendant paid Kari less than Stephen Worden for substantially similar[3] jobs.

95. Kari was not paid less due to a seniority system, a merit system, a system that measured earnings by quantity or quality of production; or any other differential that was not based on sex (that would meet the exception of 820 ILCS 112/10(a)(4)[4]).

96. Defendant acted with malice or reckless indifference to Kari Davidson.

**WHEREFORE**, Plaintiff respectfully requests that the jury find in her favor, that this Court enter a judgment against Defendant, and that she be awarded:

    a. the entire amount of any underpayment;

    b. interest;

    c. compensatory damages;

    d. punitive damages;

    e. attorney's fees; and

---

[3] Indeed, as detailed in the Facts section, Kari's job may have involved *more* skill, effort and responsibility and *more difficult* working conditions.

[4] "(A) is not based on or derived from a differential in compensation based on sex or another protected characteristic; (B) is job-related with respect to the position and consistent with a business necessity; and (C) accounts for the differential"

    f. costs.

### Count 8: Retaliation in Violation of the Illinois Equal Pay Act

97. Plaintiff re-alleges and incorporates paragraphs 1 through 51 by reference as if re-pled herein.

98. The Illinois Equal Pay Act prohibits retaliation against an employee who makes a claim of unequal pay.

99. Plaintiff made a claim of unequal pay.

100. After making that claim, Plaintiff suffered adverse employment actions by Defendant when it refused her request for time off, fired her, and refused to allow her to relocate to keep her position.

101. The adverse actions taken by Defendant against Plaintiff were a direct result of and in response to the protected activity engaged in by Plaintiff, namely, her report of unequal pay.

102. As a direct and proximate result of the above-alleged willful and reckless acts of omissions of Defendant, Plaintiff suffered damages, including lost wages and benefits and emotional distress.

**WHEREFORE**, Plaintiff respectfully requests that the jury find in her favor, that this Court enter a judgment against Defendant, and that she be awarded such legal and equitable relief as may be appropriate to effectuate the purposes of the Act, including:

    a. the value of any lost benefits, backpay, and front pay as appropriate; and

    b. an additional equal amount as liquidated damages;

    c. attorney's fees; and

    d. costs.

**Jury Demand**

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted by:

s/Julie Herrera_____

Law Office of Julie O. Herrera
159 N. Sangamon St., Ste. 200
Chicago, IL 60607
Phone: 312-479-3014
Fax: 708-843-5802
jherrera@julieherreralaw.com

Dated: 11/21/22